UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SETH KANEGIS,

                Plaintiff,

v.

ISHITA GANGULY,

                Defendant.
-------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Seth Kanegis, by and through his undersigned attorneys, for his Complaint against the Defendant Ishita Ganguly ("Ganguly"), hereby alleges as follows:

## NATURE OF THE ACTION

1. In the spring of 2012, Ganguly and others solicited an investment by Mr. Kanegis with a firm called Astute Partners (BVI) Ltd. ("Astute"). Ganguly was a Managing Director with Astute. Ganguly and others at Astute repeatedly assured Mr. Kanegis that there would be no risk to his principal during the term of the investment, and that if the investment did not generate any profits his principal would be repaid in full. In April 2012, Mr. Kanegis invested $1,000,000 with Astute. Ganguly, rather than safeguarding Mr. Kanegis' funds and carrying out the investment strategy, simply took Mr. Kanegis' funds and the funds of other investors and used them for her own personal benefit. None of the funds Mr. Kanegis invested have been returned to him.

2. As a result of her conduct, Ganguly has been indicted in the Southern District of New York. *See United States* v. *Ganguly,* 14 CR 123 (VSB) (SDNY 2014). On October 3, 2014, she pleaded guilty to count one of the indictment, charging securities fraud, and is scheduled to

be sentenced on January 16, 2015. Ganguly is also being sued in this Court by other investors. *See Campbell et al. v. Ganguly,* 14 CV 0188 (EDNY 2014) (JBW) (RML). As set forth below, Mr. Kanegis is entitled to judgment against Ganguly in the amount of $1,000,000, plus punitive damages, costs, attorneys' fees and interest.

## JURISDICTION

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Ganguly because she resides and conducts business in New York.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) and (b)(1) because Ganguly resides in Richmond County, New York.

## PARTIES

6. Plaintiff Seth Kanegis is an individual residing in Miami-Dade County, Florida.

7. Upon information and belief, Defendant Ishita Ganguly is an individual residing at 151 Nicolosi Drive, Staten Island, New York, 10312.

## FACTS RELEVANT TO ALL CLAUSES OF ACTION

8. In early 2012, Mr. Kanegis was introduced by an acquaintance to an individual named Andrew Elliot. Mr. Elliot told Mr. Kanegis that he was business partners with an individual named Paul Phillips at a firm called Astute Partners (BVI) Ltd. ("Astute"). Mr. Elliot described various investment opportunities Astute could offer Mr. Kanegis. He also told Mr. Kanegis that any principal he invested with Astute would not be at risk during the term of the investment.

2

9. Mr. Elliot put Mr. Kanegis in touch with Mr. Phillips. Mr. Kanegis thereafter communicated with Phillips by phone and electronic correspondence. Phillips, who held the title of CEO at Astute, provided an overview of the proposed investment. The investment offered the potential for large returns in a short period of time with zero risk to the principal invested. The principal would remain either in an escrow account or an Astute bank account while serving as collateral for a line of credit. Astute would use the line of credit to invest on behalf of Mr. Kanegis. If the investment did not generate profits, Mr. Kanegis' principal would be returned to him in full.

10. On or about April 10, 2012, Phillips emailed Mr. Kanegis a "Capital Contribution Contract" and accompanying Director Dividend Package for the Astute investment program (the "Contract"). The Contract described, among other things, how Mr. Kanegis' funds would serve as the basis for investments on his behalf by Astute in "Medium Term Notes" through its "Private Managed Buy Sell Program." After receiving the Contract, Mr. Kanegis discussed it by phone with Phillips. Also on the call was the Defendant Ishita Ganguly, whom Phillips referred to at various times as his "partner" and "banker." Ganguly thereafter became Mr. Kanegis' contact regarding his investment with Astute.

11. Mr. Kanegis began to negotiate certain terms in the Contract with Ganguly by phone and electronic correspondence. Ganguly's emails listed her title as Astute's "Managing Director, Global Trading." Mr. Kanegis expressed concerns to Ganguly about protecting his principal, and she assured him that it would not be subject to any risk during the term of the investment. Mr. Kanegis insisted to Ganguly that the investment documentation make clear that his principal would be protected regardless of whether the investment was successful.

12. On or about April 11, 2012, while continuing to negotiate with Ganguly, Mr.

3

Kanegis transferred $1,000,000 to Astute. At the direction of Phillips and Ganguly, Mr. Kanegis made his investment by wiring the funds to an Astute account at Citibank.

13. On or about April 13, 2012, Ganguly emailed Mr. Kanegis the final version of the Contract. The final version of the Contract contained a section entitled, "1 ·· A Asset Match Addendum" (the "Addendum"). The Addendum stated that the funds invested by Mr. Kanegis and held in Astute's Citibank account would be subject to an "internal block" and would be "placed on hold in a non-depletion manner." The Addendum indicated that the funds would remain in Astute's Citibank account while serving as collateral for a line of credit for Astute at Barclays Bank PLC. The credit would be used by Astute to make investments on Mr. Kanegis' behalf. If after twenty-one days Mr. Kanegis did not receive proceeds from the investments, the Addendum provided that Astute would repay the line of credit from its own checking account, which would then release Mr. Kanegis' funds in the Astute Citibank account for return to Mr. Kanegis. In short, the worst case scenario for Mr. Kanegis would be no proceeds from the investment and a return of his principal.

14. On or about April 14, 2012, Ganguly emailed Mr. Kanegis an Astute document entitled "Programs and Procedures" that described Astute's investment programs. The document contained the same representations about how funds invested with Astute would be subject to a "block," and how Astute would repay the principal in full from its own checking account if the investment program did not deliver the promised return within the term of the investment.

15. On April 14, 2012, and in reliance on the aforementioned representations from Ganguly and Phillips, Mr. Kanegis emailed Ganguly his approval of the Contract.

16. On or about April 19, 2012, Ganguly emailed Mr. Kanegis and another prospective investor and again described the investment program, including how the invested principal

4

would be subject to a "block" and how Astute would repay it if the investment program did not deliver a return within the term of the investment.

17.     On or about April 25, 2012, Mr. Kanegis met Ganguly in person in New York. They talked about Mr. Kanegis' investment and about potential future investments Mr. Kanegis could make with Astute.

18.     On or about May 2, 2012, Ganguly emailed Mr. Kanegis a letter purportedly from Barclays Bank PLC. The letter referenced both the number of the Capital Contribution Contract signed by Mr. Kanegis as well as the number associated with his transfer of $1,000,000 to the Astute Citibank account. The number of the Citibank account listed in the letter was the same as the number of the Citibank account into which; Mr. Kanegls had been directed to transfer his funds. The letter stated that an "Administrative Block" had been placed on $1,000,000 in the Astute Citibank account and that it would serve as collateral for an Astute line of credit at Barclays. The letter listed the name on the Astute Citibank account as "Astute Partners Corp, Ishita Ganguly." Upon information and belief, Ganguly directly controlled the Astute Citibank account.

19.     On or about May 20, 2012, Mr. Kanegis began emailing Phillips and Ganguly inquiring about when he would receive his funds. On or about May 22, 2012, Ganguly emailed Mr. Kanegis and told him she was working with the banks to get Mr. Kanegis both his principal and the proceeds from the investment. Two days later, Mr. Kanegis still had not received his funds and again emailed Phillips and Ganguly. Ganguly responded that she was "trying to get the block released," and that "[i]f necessary we will use our reserves to pay the IM from Barclays." Ganguly also wrote that Astute had other much larger clients, and that she was not used to one client being "so hands on."

20. Mr. Kanegis thereafter spent months making inquiries of Astute about his funds. Ganguly eventually ceased communication with Mr. Kanegis and Phillips thereafter responded to his inquires. Phillips repeatedly offered excuses and explanations for the delay in the return of the invested funds and profits.

21. Eventually, in early 2013, Phillips began to point the finger at Ganguly. During a meeting with Mr. Kanegis, he expressed concerns about her background and indicated that she had misrepresented her professional experience to him. Mr. Kanegis also learned during this meeting that Phillips had never actually met Ganguly in person, despite the fact that Ganguly had previously claimed to Mr. Kanegis that she had met with Phillips many times and even stayed with him at a "castle" he owned. Phillips also told Mr. Kanegis that Ganguly was having personal problems, and asked for his continued patience.

22. Despite months of requests for the return of his initial investment, Mr. Kanegis has not received any of his money back. Upon information and belief, Ganguly never invested Mr. Kanegis' funds and instead diverted them and funds invested by others for her own personal benefit, including:

   a. During the period April 2012 to May 2012, purchasing approximately $300,000 worth of jewelry, including directly wiring jewelry payments from the Astute Citibank account;

   b. During the period April 2012 through March 2013, transferring approximately $2 million out of the Astute Citibank account to her own personal accounts; and

   c. On or about August 9, 2012, purchasing a home on Staten Island for approximately $2.2 million.

6

## FIRST CLAIM FOR RELIEF

### (Fraud in the Inducement)

23. Mr. Kanegis repeats and re-alleges paragraphs 1 through 22 above as though fully set forth herein.

24. As set forth above, Ganguly made numerous representations to Mr. Kanegis to induce him to transfer $1,000,000 to the Astute account she controlled. These representations included, but are not limited to, (1) assuring Mr. Kanegis that his funds would be invested, (2) assuring Mr. Kanegis that his principal would be "blocked" in an Astute bank account during the term of the investment, and (3) assuring Mr. Kanegis that the worst-case scenario for his investment was a return in full of his principal.

25. Among other things, at the time that these representations were made, Ganguly knew that: (1) Mr. Kanegis' funds would not be invested, (2) Mr. Kanegis' principal would not be "blocked" in a bank account during the term of any investment, and (3) Ganguly intended to misappropriate Mr. Kanegis' funds for Ganguly's personal use.

26. Ganguly's representations to Mr. Kanegis were false, and she knew they were false when she made them.

27. Ganguly made these representations to Mr. Kanegis to induce him to transfer his funds to an Astute account she controlled. Mr. Kanegis reasonably relied on her representations and assurances.

28. To date, Mr. Kanegis' principal still has not been returned to him. As a result of Ganguly's false representations, Mr. Kanegis has suffered damages in an amount to be determined at trial, but not less than $1,000,000, plus punitive damages, costs, attorneys' fees,

7

and interest.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

29. Mr. Kanegis repeats and re-alleges paragraphs 1 through 28 above as though fully set forth herein.

30. As set forth above, Mr. Kanegis and Ganguly entered into the Contract.

31. The Contract is a valid and binding contract.

32. Mr. Kanegis performed all of his obligations under the Contract.

33. As set forth above, Ganguly breached the Contract by, among other things: (1) failing and/or refusing to keep Mr. Kanegis' funds safe and use them as collateral for an investment on behalf of Mr. Kanegis, and (2) using Mr. Kanegis' funds for her own personal benefit.

34. Upon information and belief, Ganguly used Mr. Kanegis' funds to. buy approximately $300,000 worth of jewelry and a home at 151 Nicolosi Drive, Staten Island, New York 10312 for $2.2 million, and also transferred approximately $2 million of Mr. Kanegis' and others' funds to her own accounts.

35. As a result of Ganguly's breach of the Contract, Mr. Kanegis has suffered damages in an amount to be determined at trial, but not Jess than $1,000,000, plus costs, attorneys' fees, and interest.

## THIRD CLAIM FOR RELIEF

### (Alternative claim for Unjust Enrichment)

36. Mr. Kanegis repeats and re-alleges paragraphs 1 through 35 above as though fully set forth herein.

37. Mr. Kanegis transferred $1,000,000 to an Astute account controlled by Ganguly. These funds were intended to be used for an investment on behalf of Mr. Kanegis. At no time did Mr. Kanegis authorize Ganguly to use these funds for her own personal benefit.

38. Upon information and belief, Mr. Kanegis' funds were not used for an investment and were instead diverted by Ganguly for her own personal benefit. Ganguly was not entitled to take Mr. Kanegis' funds for her own personal benefit. Ganguly was therefore unjustly enriched at the expense of Mr. Kanegis, and it would be against equity and good conscience to permit her to retain Mr. Kanegis' funds.

39. As a result of Ganguly's unjust enrichment, Mr. Kanegis has suffered damages in an amount to be determined at trial, but not Jess than $1,000,000, plus costs, attorneys' fees, and interest.

## FOURTH CLAIM FOR RELIEF

### (Constructive Trust)

40. Mr. Kanegis repeats and re-alleges paragraphs 1 through 39 above as though fully set forth herein.

41. Ganguly made numerous promises to Mr. Kanegis including, but not limited to, (1) that Mr. Kanegis' funds would be invested on his behalf and (2) that his principal would be kept safe throughout the term of the investment.

42. In reliance on these promises, Mr. Kanegis transferred $1,000,000 to an Astute account she controlled As a result of her misrepresentations and Mr. Kanegis' reliance on them, as well as her acceptance of Mr. Kanegis' funds as an apparent agent of Astute, Ganguly stood in a fiduciary and confidential relationship with Mr. Kanegis.

43. Upon information and belief, rather than keep Mr. Kanegis' funds safe and use

9

them as collateral for an investment on behalf of Mr. Kanegis, Ganguly simply took them for her own personal benefit. Upon information and belief, Ganguly used Mr. Kanegis' funds to. buy approximately $300,000 worth of jewelry and a home at 151 Nicolosi Drive, Staten Island, New York 10312 for $2.2 million, and also transferred approximately $2 million of Mr. Kanegis' and others' funds to her own accounts.

44. Mr. Kanegis' funds are directly traceable, and Ganguly would be unjustly enriched if permitted to retain them. This Court should therefore impose a constructive trust over any and all property Ganguly purchased with Mr. Kanegis' funds, as well as over any accounts into which she transferred Mr. Kanegis' funds, and take any other equitable action necessary to aid in the return of the funds unjustly taken from Mr. Kanegis.

## FIFTH CLAIM FOR RELIEF

### (Accounting)

45. Mr. Kanegis repeats and re-alleges paragraphs 1 through 44 above as though fully set forth herein.

46. As set forth above, Ganguly stood in a fiduciary and confidential relationship with Mr. Kanegis and has wrongfully taken Mr. Kanegis' funds.

47. Mr. Kanegis duly demanded that Ganguly account to Mr. Kanegis, and such demand was refused.

48. As a result, Mr. Kanegis is entitled to a full accounting of all her assets to determine whether she may have diverted any of Mr. Kanegis' funds to any other places or for any other purposes.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Kanegis respectfully requests relief as follows:

A.  On the first claim for relief, for a judgment against Defendant Ganguly for the total amount of damages suffered by Mr. Kanegis as a result of her fraudulent conduct, in an amount to be determined at trial but believed to be not less than $ 1,000,000, plus punitive damages, costs, attorneys' fees, and interest.

B.  On the Second Claim for Relief, for a judgment against Defendant Ganguly for the total amount of damages suffered by Mr. Kanegis as a result of her breach of the Contract, in an amount to be determined at trial but believed to be not less than $1,000,000, plus punitive damages, costs, attorneys' fees, and interest.

C.  On the Third Claim for Relief, for a judgment against Defendant Ganguly for the total amount of damages suffered by Mr. Kanegis as a result of her unjust enrichment at Mr. Kanegis' expense, in an amount to be determined at trial but believed to be not less than $1,000,000, plus punitive damages, costs, attorneys' fees, and interest.

D.  On the Fourth Claim for Relief, that this Court (1) decree that Defendant Ganguly is a trustee of any and all property purchased in whole or m part with funds taken by Ganguly from Mr. Kanegis as well as any of Mr. Kanegis' funds transferred by Ganguly into her own accounts; (2) order that all such property and funds be held in a constructive trust; and (3) order Ganguly to convey all such property to Mr. Kanegis.

E.  On the Fifth Claim for Relief, that th1s Court order an accounting of all of Ganguly's assets to determine whether she may have diverted any of Mr. Kanegis' funds to any other places or for any other purposes.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Kanegis demands a trial by Jury in this action of all triable issues.

Dated: Uniondale, New York
March 8, 2018

                                                    WESTERMAN BALL EDERER
                                                    MILLER ZUCKER & SHARFSTEIN, LLP

By: /S/
      Jeffrey A. Miller, Esq.
      1201 RXR Plaza
      Uniondale, New York 11556
      (516) 622-9200
      jmiller@westermanllp.com
      *Attorneys for Plaintiff*

1720331